143301 William Evans v. OH Laborers Fringe Benefits Program at All Arguments not to exceed 15 minutes per side Mr. Mangano for appellant Good afternoon, your honors. My name is Bill Mangano, and I represent the Laborers District Council and Contractors Pension Fund of Ohio. Today, I want... Are you reserving any time, Mr. Mangano? Yes, your honor. I have reserved two minutes for rebuttal. You may proceed. Thank you, your honor. This case today is about ERISA's claims and appeals procedure and whether a participant in this case can continue the appeal process indefinitely by offering untimely submissions, or once the case is finally decided by the appeals committee in this case and it is not appealed in a timely fashion, whether that decision is in fact final and binding on the participant. Before we even get to the substance of Mr. Evans' appeal, there is an issue with respect to whether or not the rule, the two-dismissal rule, or the doctrine of res judicata, bars Mr. Evans' claim in this case. In this instance, we have a case... Before we get mired too far down in the fascinating area of res judicata and futility, I want to know from your perspective as an officer of the court whether there's any evidence in the record, whether it was submitted initially or newly submitted evidence that you're complaining about, that shows that there were actual contributions made for more than 505 hours. Absolutely not, your honor. I know there's an argument about, yes, he worked 1,900 hours or whatever, and somebody says he worked the whole year, but have they come up with any evidence whatsoever that there was actually a contribution for some of those hours? No, your honor, no evidence at all. Is there any explanation why they would have contributed for some hours but not contributed for others? In this particular case, your honor, the funds records, which is the microfilm data that the lower court absolutely refused to consider as evidence, clearly indicates that Mr. Evans was credited with 500 and, actually 504 hours according to the microfilm records, but the fund credited him with 505 hours. Well, you don't care how many hours he actually worked. You just want to, you're concerned about the number of hours for which the employer submitted contributions. That's correct, your honor. The plain language is very clear. Would his beef then, if you're right, be with the employer who, if you're right, failed to remit contributions for some of the hours he did work? His beef, your honor, may be with the employer, but the focus here is that the 505 hours of contributions were credited to his account. We received those from the employer. Not only do we have our own records, but we have in this case, which is not always the case, a contemporaneous audit which occurred. In this case, the funds auditor went out to Rulon Corporation, reviewed the payroll records of the Rulon Corporation, and confirmed that the payroll records corroborated or supported the amount of the contributions that were actually paid by the fund. It's possible the employer did some work where he wouldn't have contributed to the out-of-state work. It's possible, your honor, that the Rulon Corporation, it is very possible that the Rulon Corporation could have worked out-of-state. It could have worked outside the jurisdiction of the Labor's District Council Pension Fund. Or what is true is that the Rulon Corporation at that time could have been paying below the standard rate of contributions. That means you have a scenario where someone may have worked 1,300 hours, but they're actually only credited for 505 hours of contributions because the employer paid at a rate that was lower than the standard rate of contribution. It is clear that the plan document provides that you are only credited for the amount of hours for which the pension fund receives contributions. In this particular case, we only received 505 hours of contributions. Really, that is the end of the argument. Do they even argue that you actually received more than that, but you miscredited it or something like that? No, your honor, they do not argue that. They simply rely, what they do is, their argument, unfortunately, is nothing but supposition. What they say is that the Social Security report, which was after acquired evidence, indicates that he had approximately $5,300 in earnings in 1965, and if you divide that by $4.18, he had worked for the employer over 1,000 hours. But that doesn't get to the result, which is we need him to have credited 1,000 hours of contributions, and we simply don't get there. So I think, your honor, if I may, if I go first to the procedural issues of this case, there are two really important issues. The first is the two-dismissal rule and the doctrine of res judicata. Very quickly, this case was filed three times. The first was in 2010 in the Summit County Court of Common Pleas. In that particular case, the plaintiff, Mr. Evans, brought an action against the name defendant, which is called the Ohio Laborers' Fringe Benefit Programs. In that lawsuit, he indicates specifically that he alleges that he exhausted all administrative remedies in this matter by seeking unsuccessfully relief from the Ohio Laborers' Fringe Benefit Programs governing board. The governing board, of course, in this case, is the pension fund. But what's important here is that Mr. Evans himself perceived the Ohio Laborers' Fringe Benefit Programs and the Laborers' District Council Pension Fund as one and the same. Based on his own allegation, he believed that they were substantially the same parties. The precedent in this circuit indicates that where the parties are substantially the same, or in privity, the doctrine of res judicata applies. Of course, there are three other elements to the doctrine of res judicata, which are not at issue here. In addition, it is clear that this court, in applying Ohio law in other federal courts, have found privity in the context of the two-dismissal rule, where the parties share a mutuality of interest or a principal-agent relationship or something analogous to a principal-agent relationship. In this case, it's important to note that the administrative manager of the Ohio Laborers' Fringe Benefit Program indicated that the pension fund and the Ohio Laborers' Fringe Benefit Programs are frequently viewed as one and the same. He also said that it... The program is simply the administrator for the fund, is it not? It is, Your Honor. It acts as an agent and as an administrator in so much as it does several things for the pension fund. In a general sense, it does administrative duties. The fund is a legal entity. That is correct, Your Honor. The fund has to operate through people, somebody you can contact. That's correct. Is there anybody you can contact on behalf of the fund other than the program? No, Your Honor. In matter of fact, the Ohio Laborers' Fringe Benefit Program conducts the customer service activities for the pension fund. It also determines eligibility for the pension fund. It also corresponds with participants before and after. It also handles the applications for pension fund. It also pursues delinquent contribution suits on behalf of the pension fund. Essentially, all activity that is external to the public, to the participants, to the beneficiaries, is done through the Ohio Laborers' Fringe Benefit Program office, which is a collection of not only the Laborers' District Council pension fund, but also the insurance fund, an apprenticeship fund, and a labor management cooperative fund. Let me just ask you one factual question. The parties that were in the second suit, which is the one where we had, as you would argue, a notice of dismissal for purposes of Rule 41, those are the exact same parties as in this case. That is correct, Your Honor. Correct? Yes. I mean, one question I have, and it's probably better directed at your colleague across the table there, is Rule 41 says if the plaintiff previously dismissed any federal or state court action based on or including the same claim, a notice of dismissal operates as an adjudication of merits, which would seem to say, directs us not to look at who the parties are, but whether it's the same claim that was in both of the dismissed cases. And if so, the notice of dismissal in the second case operates as an adjudication on the merits and therefore would have raised judicata effect against the same parties, which we have. That is correct, Your Honor. The way it flows, though, is this. If the two-dismissal rule applies, okay, then we look to the doctrine of rest judicata as to whether or not any subsequent suits on the same causes of action apply. Right. So rest judicata has the four elements. The one is if the second action has to involve the same parties or their previous. Yes. And so we believe that the Ohio Laborers' Fringe Benefit Program and the Laborers' District Council Pension Fund of Ohio are substantially the same, and if they're not substantially the same, they're certainly in privity with one another. I guess, I mean, just to make clear or to make sure I'm not misunderstanding, the other case, the second case that was dismissed, did that have the exact same caption as this case? Yes. Evans v. Ohio Laborers' Fringe Benefit and then the Laborers' District Council, et cetera. Yes, Your Honor. So, I mean, if the second dismissal is an adjudication on the merits as to these parties, then, of course, there's rest judicata as to these parties. That is correct, Your Honor. And so, well, again, I should probably follow up with your colleague about why we would worry about who was in the first case so long as it had the same claim. So the other area, Your Honors, that I think is worth exploring at this point is the concept of whether or not Mr. Evans' failure to exhaust his administrative remedies was... I know here in a timeline I made that the pension was first denied February 28, 2007, and that was a notice the appeal must be filed within 60 days. However, the notice of appeal was not filed until late 2207, some six months rather than 60 days. That is correct, Your Honor. And you say that amounts to a failure to exhaust remedies. Well, yes, Your Honor. I think there's actually two failures. First is the first decision, the initial determination of the benefit, came out on February 28, 2007. Mr. Evans at that point had 60 days to file an appeal. He did not. So really at that point, we're talking April 29, 2007, the decision was final and binding. Nevertheless, the fund, without waiving its rights, considered an appeal that was filed on August 22, 2007, which would have been three months late in that case. And then we issued our decision, our second appeal, on October 1, 2007. Again, we gave him 60 days to appeal. But Mr. Evans never did that. He waited, actually, until there was any communication at all with him until June 3, 2008, nearly six months after the appeal period had expired, at which time his counsel then, not the current counsel, but Mr. Schrader, indicated that we intend to file an affidavit with you that will show, or that will attempt to show, that Mr. Evans actually worked 1,000 hours in 1969. Even that one wasn't an appeal. It was just a letter. That's correct, Your Honor. And the affidavit wasn't even submitted at that point. And what's more important is that the issue of 1969 wasn't even considered in the appeal process. During the entire appeal process, during the entire administrative appeal process, Mr. Evans was only disputing his years of service in 1967, which I will note that Judge Pearson found that the trustees correctly decided the issue over 1967. The affidavit of the supervisor, I thought that was covered in 1969, wasn't it? Yes, Your Honor. I see my time is up. May I answer your question? The affidavit of Mr. Calvin Jett dealt with the issue in 1969. Unfortunately, the affidavit of Mr. Calvin Jett wasn't submitted until July of 2008, well after the appeal period had expired. Thank you. Good afternoon, Your Honors. My name is Jack Wisensell. I'm from Akron, Ohio. I represent the appellee in this case, Mr. Evans. This case really only has one single issue that the court really needs to decide, and that is the question of whether or not Mr. Evans had in excess of the 1,000 hours that were... What about the fact that he was supposed to appeal in 60 days and he waited six months? We believe that... Then they considered even that late appeal. Then he was supposed to appeal in 60 days again. In that time, he waited nine months, I believe. They denied his claim, Your Honor, on three separate occasions, simply stating that our records show he's got 505 hours. It's not well thought out, well reasoned denial of the claim. They just say, We show he's got 505 hours. That's it. Appeal denied. From our position... I don't understand. What's the matter with that? Maybe let me preface my question with a different question. Is there any evidence that you have that the employer actually submitted contributions for more than 505 hours? I am not aware of any. How could they possibly be arbitrary and capricious in saying that you don't comply with the terms of the plan, regardless of what Social Security says, how many hours he actually worked, if the employer didn't remit the contributions the plan requires in order for him to get credit, how could they be arbitrary and capricious? That's how we get into the contiguous service argument. The Court of Federal Regulations, which was promulgated at a point in time when Mr. Evans was still employed, was a covered employee, was working for Rulin, provides for the contiguous service. I think there was a question by Judge Bertelsman earlier about whether or not perhaps... Let me find the question. So under contiguous service, you're saying that if he worked more hours and his employer didn't remit the required contributions, he gets credit for the contributions even though they weren't remitted. That's your argument? That's correct, and that's the law, according to the Court of Federal Regulations and the Federal Register, as of the time that Mr. Evans was still employed. And what's your best case that says that? Subsequently, the... Excuse me. What's your best case that says that? Bear with me a second, Your Honor. Or what's any case that says that? In our brief, Your Honor, from pages 5 through 10, we discuss that. Starting on page 5, we cite the Code of Federal Regulations. We also cite then the case of City of Los Angeles, Department of Water and Power v. Manhart. We also cite Rosen v. Public Service, Electric and Gas, Weiner v. Edison Brothers, Ponce P-O-N-C-E v. Construction Laborers Pension Trust. That's a Ninth Circuit case from 1980. Apparently, it's not in 5 through 10 because there aren't any cases in 5 through 10. I apologize. I'm actually looking at... I apologize. I'm looking at our reply brief in the trial court. Let me find where that argument is in our appellate brief. Your Honor, I didn't make the argument in the appellate brief because the appellant did not raise any issue with respect to that in its appeal. They didn't raise a question with respect to the contiguous service. So there was no argument in their brief for me to respond to, but it is raised in our brief at the trial court level at pages 5 through 10, the cases that I just cited. I'm trying to figure out if that's what you're relying upon now. I asked you why weren't they arbitrary and capricious, or why were they arbitrary and capricious. You say continuous service rule. I recall... I didn't recall reading anything about that in your brief. So now I see that there is a short paragraph on page 26 and 27. It doesn't cite anything. So how is this not waived by you? Well, I believe it's waived by them at the court of appeals. They're not relying upon that. You're relying upon it. If they don't make an argument contrary to the basis that the district court made part of its ruling on. Okay, so you're saying that the district court relied upon the continuous service rule? Is that what you're telling me? You don't need to spend a lot of your time. If the answer is yes, just say yes and I'll look. In part, I believe that's correct, Your Honor, yes. All right, you don't off the top of your head know where she relied upon that, do you? Because I don't remember that. It doesn't mean that you didn't. The discussion starts at least on page 12. Defendant raises the possibility that plaintiff worked in part in non-covered employment for ruling in 69. Well, page 12 is the last page of her order that has half of a paragraph and then the conclusion. I've got an 18-page opinion in front of me, Your Honor. I may be looking at, was there a reconsideration? There were multiple orders in this case. All right, so it's the longer one you want me to look at? All right, I don't want to waste any more of your time. I'll look it up. Document number 39, page ID 490 through 507. And that non-covered employment discussion starts on page 12, which is page ID 501. Okay, I'll look for it. It continues for several pages there. Go ahead with your argument. So if the court ruled in part on that basis and they don't raise an issue with it in the appeal. We got it. You answered my question. But I think that's why I got into the argument in the trial court level because of the very point that you raised where they said even though we established that he had worked 1,200 or 1,300 hours, the argument was made, but there were no employer contributions for anything over the 505. I don't know, frankly, Your Honor, that there's any evidence of employer contributions at all, and that's part of the problem that I think Judge Pearson had is that there's one piece of paper that says 505. We don't know where it came from, who created it, when it was created. There's no testimony that relates to that. There's no affidavit that relates to that. And that's part of the problem that the trial court judge had. So a plan maintains records, and when they're contacted by a prospective pensioneer, they send them a copy of those records. That's not enough? Where is there authority that says that the plan has to have more than whatever the business records are? They are what they are. There's a computer printout that says 505. So what says there has to be more than that? We don't know anything about that document. Maybe not, but what says there has to be more than that? Well, I suppose, you know, did they generate it at the time this case came about? I don't know. I know these cases are decided in a vacuum based on the administrative record, but that's all that's been supplied. I would think that after all these different appeals. We don't have trials in these cases. I understand that. At the same time, Your Honor, they very easily could have compiled an affidavit of somebody, the person who maintains the records, testifying to how the record was compiled, where the underlying data came from. We don't have any of that. We have a piece of paper that says 505 hours. And that's where we get into, then again, the contiguous service argument based on that argument that they raised in the trial court, which is my position. They waived at this level, and they're stuck with the decision of the trial court on that particular issue. Let's back up. As I said, there was an initial decision in February of 2007. It said the appeal must be within 60 days. The appeal was not filed until August of 2007, which was about six months. So I understand your defense to that is you say it would have been futile to appeal. But what is to indicate that it would have been futile if you had come up with some additional information? He didn't go to a lawyer until June of 2008, who did come up with some additional information. By that time, they said it's too late. Well, I think the point is you're... I don't know if the additional information would have been persuasive, but they certainly, if you had furnished that information within the 60 days, I understand you weren't the attorney at this time. I understand. I didn't represent Mr. Evans at the time. Pardon me? I didn't represent Mr. Evans at the time, but our position is that, frankly, in light of all the evidence that they've got that we have provided that's in the record, and they still ignored that evidence and decided that he's not entitled to the matter. They didn't have it in that 60 days after the first... But it was eventually provided, and they still refused. And then ultimately, when we're... All of these plans have time frames within which you have to do certain things. And so what justifies your client being excused from these time limits? Oftentimes the claimant would say, well, the plan waived it, but clearly didn't waive it here. They've reserved their rights to timeliness at every stage of the proceeding, right? They did. So then what gets you beyond the plain language of the plan that sets forth time limits? I think the claim of futility gets us past that. I mean, there are cases where there is no appeal filed after the first determination, and then there's a lawsuit filed, and the claim is that it would have been futile to continue in the appeal process, the administrative appeal process, and so now we've got three appeals that were not timely. And I'll admit, not timely, but in each instance... Let me ask you a question. I mean, you know, like for example in this Duran case, we said the challenge there was to the legality of the plan's methodology for calculating benefits, that the methodology itself was illegal. And we said, you know, it's futile for them to bring that to the administrator because the administrator thinks it is lawful. And we distinguished that kind of case from one where the participant says his benefits were calculated improperly. Methodology is fine. You just messed up your math. And we said in those cases, you do have to go first to the plan because the plan knows best.  Why isn't your case more like, you know, where, hey, you didn't apply the plan correctly, you didn't calculate correctly as opposed to what we had in Duran? I suppose it is more akin to the latter case that you referenced, but I guess I would go back to the fact that we did have three instances where they looked at the evidence that we provided and still denied the claim in each instance. I mean, I understand that practical point. So if we give them an affidavit and we give them the Social Security records and we give them their own records that show that he worked from 67 to 78. Let me ask you this question, though. I understand your practical point. You know, they were going to say no. They did say no on the merits. I mean, we know they'd say no. Is there a case, though, that says if a plan adjudicates on the merits, notwithstanding untimeliness and notwithstanding its reservation of the timeliness issue, we say it's futile because we know what they really think about the claim? I don't know that I found a case precisely on all of those facts. Okay. All right. Thanks. I want to go back to figuring out what your claim is as to these hours above 505. Are you saying that the employer did make contributions for more than 505 hours and the employer's records are just wrong? That's A. Or are you saying, B, it doesn't matter because of an IRS rule? Or perhaps, C, as you're saying both? I'm saying that I don't know the answer to the first one, to the first question you asked, Your Honor. How can you be before us saying he deserves to get credit for contributions that were made if you have no evidence they were made? Because it wouldn't be Mr. Evans' obligation or responsibility to maintain those records, and if the contributions should have been made but were not, it's not his fault. So there, right on that point, you're saying, let me ask you to assume, for purposes of this question, that the contributions that he did work, contributions should have been made but were not. Then, ignoring an IRS rule, under the plan, does he get credit for those contributions that should have been made but were not? I suppose the answer to that is likely not, Your Honor. Okay. So if there's no record that there were contributions made, then on the merits, are we not then down to the fact that it could only be the IRS regulations that you say then, give him credit for contributions that should have been made but were not? So, in other words, it doesn't matter whether they were or were not made? I think that is the position that we took in response to their argument that there were no additional contributions made. And I think there is not evidence in the record that shows, one way or the other, whether he worked under covered employment or non-covered employment for those extra hours over the 505. I think we likely then have to assume that it was not covered employment, contributions did not need to be made, but he gets credit for those under the contiguous service rule. My time is up. Any other questions, Your Honors? Thank you. May I proceed, Your Honors? Please. Thank you. I have to say this argument has taken a turn that I did not expect, which was now turning from whether contributions were made to the fact that, well, they probably weren't, but it doesn't matter because of a Department of Labor rule. And I can't find where anybody has spoken to that. With respect to the contiguous service rule, Your Honor, I would note that we believe, and we agree with you, that the Plaintiff Evans did waive his right because all he did in his brief was simply accuse us of not addressing it in our brief, when, in fact, we did that at pages 27 and 28. We also addressed the argument in our reply brief and emphatically. Yeah, but wait a minute. Wait, wait, before you go too far down that road. He won. He won below. So why would he appeal in connection with what the district judge did or did not say about a contiguous service rule? Your Honor, he's relying on an argument, first of all, that was not discussed at the administrative level. It is based on a document, the Social Security report from 1969, which was not reviewed by the administrator at the administration level. And there needs to be a point of clarity on that particular document. We were accused by not only the Plaintiff, but also the court of omitting a document that was critical to Mr. Evans' benefit. That document was not created until October 7, 2008. It is Exhibit B to the complaint. It is certified by the Social Security Administration as dated October 7, 2008. More importantly, the document,  covers an entirely different period from 1962 through 1967. And the reason that is, is because the appeal was always about 1967, not about 1969. The trustees never had an opportunity to review any document with respect to 1969, never had any opportunity to respond to a contiguous service argument at the appeal level. More importantly, even if somehow the after-acquired evidence, this document, may I proceed? Because I'm out of time. Even if this document is somehow allowed to be considered, because the standard is that this court must only review the evidence that the trustee actually reviewed at the administrative level. So if we go beyond that rule, and we say that that rule doesn't apply here for some reason, and we look at the 1969 report, we can't determine that the amount of hours actually worked were 1,000 hours simply based on a Social Security report. This is interesting, but you're completely missing the import of my question. Your opposing counsel says that it doesn't matter what the plan says about the number of contributions, because if somebody meets a DOL regulation, then they get a pension regardless of whether contributions were made or not. Now, maybe that's what this regulation says. I find that kind of hard to believe, but does the regulation supersede the express language of the plan as your fellow counsel is arguing? No, Your Honor. First of all, the... Okay, why not? Well, the IRS regulation does not supersede the requirement that you still have to have 1,000 hours for purposes of vesting. First off, the law or regulations that the district judge is citing are not IRS, they're Department of Labor. She's talking about Department of Labor. I'm sorry, the Department of Labor regulation is the regulation that is cited by Mr. Evans in his lower court brief. That is correct, Your Honor. And does that supersede the language of the plan? It does not supersede the language of the plan in so much as that Mr. Evans still is required to obtain 1,000 hours of service. There is no document that conclusively establishes that Mr. Evans had 1,000 hours of service in 1969. Even if you take and if you accept the supposition that you take 5,200 divided by $4.18 and come up with 13 hours, you still have to consider the fact that Mr. Evans was probably paid overtime or double time. Hold on just a minute. I'm still confused because at no point in the few paragraphs that the district judge's opinion devotes to DOL regulations is there any discussion about 1,000 hours. So first off, is she right in what she says? And if not, is it because she overlooked the 1,000-hour requirement? That is correct, Your Honor. You still have to demonstrate that you had 1,000 hours for purposes of vesting, and there is nothing in the record that conclusively establishes that Mr. Evans had 1,000 hours in 1969. The only conclusive documents are the fund's own records, which establish that he had 505 hours of contributions, and that the payroll records, which were reviewed by the fund's auditor, confirmed that fact, Your Honor. Any questions? Thank you, Your Honor. All right. Thank you. We'll slog through this and take the matter under consideration.